IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE DISCLOSURE OF LOCATION DATA RELATING TO A SPECIFIED WIRELESS TELEPHONE ) ) ) ) ) ) ) | Magistrate No. [SEALED]   16 - 136 M |

APPLICATION AND AFFIDAVIT FOR DISCLOSURE OF
LOCATION DATA RELATING TO A WIRELESS TELEPHONE

1.  I, Chris Calamaro, being duly sworn, state as follows:

That I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco and Firearms (ATF), Pittsburgh, Pennsylvania, and have been so employed since July 2014. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy in Glynco, Georgia. I have received training in the investigation and enforcement of federal criminal laws to include firearms and narcotics laws. I make this affidavit in my official capacity as a Special Agent with the ATF. This affidavit is based upon my present knowledge obtained during my investigation as well as information provided to me by other law enforcement officers.

2.  For the reasons and to the extent detailed below, this application seeks:

    a.  An order pursuant to 28 U.S.C. § 1651(a), and Fed. R. Crim. P. 41 and 57(b), authorizing the disclosure of physical location data, as described more fully below, generated at any time up to 45 days from the date of the proposed order, at such intervals and times as the government may request, that will establish the approximate position of a T-Mobile

cellular telephone, telephone number 412-799-4505 (the "**SUBJECT TELEPHONE**"), being utilized by Jerome "Stunna Quad" HOLLAMAN.

      b.      Authorization under 18 U.S.C. § 3103a, to the extent applicable, for good cause shown, not to reveal the order of disclosure until 30 days after acquisition of the last court authorized disclosures (unless extended for good cause shown by an updated showing of the need for further delay);

      c.      An order pursuant to 18 U.S.C. § 2705(b) and any other applicable provision, in conjunction with the warrant applied for herein, that directs T-Mobile, as well as its agents and representatives, not to disclose the existence of the warrant, its execution, or the existence of the underlying investigation until further notice; and

      d.      An order sealing until further notice the application, warrant, and all orders and other papers and writings filed with or concerning this application because, as further explained below, a sensitive investigation is currently ongoing and premature disclosure of the existence of the investigation could result in, among other things, danger to those involved in the investigation and loss of evidence.

      3.      Your affiant's information and the grounds for his application relate to an investigation of Jerome HOLLAMAN and others, and their ongoing use of the **SUBJECT TELEPHONE** to distribute and possess with intent to distribute heroin (and conspire to do the same) in the Western District of Pennsylvania and elsewhere, in violation of 21 U.S.C. § 841.

      4.      I have been advised that T-Mobile, which services the **SUBJECT TELEPHONE**, has the technical means to promptly generate and record physical location data with respect to a specified wireless telephone by measuring its position relative to other known

reference points. This data is the product of techniques that this service provider developed to comply with a federal mandate to supply emergency responders with enhanced 911 ("E 911") service. The wireless industry has adopted standards for the precision with which such techniques are expected to locate a wireless telephone.

5. When directed pursuant to court order, T-Mobile will provide a designated law enforcement agency with periodically updated physical location data with respect to the **SUBJECT TELEPHONE**. In order to acquire each update, the **SUBJECT TELEPHONE** must be powered on and the service provider may send a signal to the **SUBJECT TELEPHONE** that results in it transmitting a response to the provider's network. Where, as here, physical location data is to be generated at the request of law enforcement, the service provider may send its triggering signal to the **SUBJECT TELEPHONE** unobtrusively, without alerting the users of that device.

6. If, for any reason, the service provider is unable to generate sufficient location information by sending a signal to the **SUBJECT TELEPHONE**, or by otherwise using known reference points, the government requests that the service provider furnish such other physical location data as is available, including information reflecting the tower and antenna face ("cell site") used by the **SUBJECT TELEPHONE** at the start and end of any call.

7. In submitting this application and affidavit in support of an order authorizing the disclosure of physical location data relating to the **SUBJECT TELEPHONE** utilized by HOLLAMAN, I submit that I have probable cause to believe that from in and around January 2016 to the present, HOLLAMAN has distributed and possessed with intent to distribute heroin, in violation of 21 U.S.C. § 841, as outlined below, and that he has possessed the **SUBJECT**

**TELEPHONE** while committing, preparing to commit, and/or attempting to commit that offense.

8. Agents from ATF and other investigating authorities have been engaged in an investigation of HOLLAMAN and others for violations of federal drug trafficking laws. It has been determined during the course of the investigation that the **SUBJECT TELEPHONE** is being utilized by HOLLAMAN, who is believed to be receiving and distributing a quantity of heroin in the Western District of Pennsylvania. HOLLAMAN has admitted to a Confidential Source, during a monitored meeting, that he is obtaining his heroin from New Jersey.

9. It is believed that further information concerning the aforementioned offense and the location of the vehicles and residences that HOLLAMAN is utilizing for his drug trafficking will be obtained upon discovery of the location data requested herein, related to the **SUBJECT TELEPHONE**.

10. I submit that the following establishes probable cause to believe that a crime has been committed, that HOLLAMAN, together with others, committed that crime, and that the information likely to be received concerning the location of the **SUBJECT TELEPHONE** will constitute evidence of that crime.

11. Beginning in early 2015, law enforcement interviewed Confidential Source #1 ("CS1") regarding Jerome HOLLAMAN and Paris CARTER. CS1 has identified HOLLAMAN as a known narcotics trafficker and aspiring rapper that CS1 has known for many years. CS1 told investigators that HOLLAMAN is known on the streets as "STUNNA QUAD" and that is also his rap name. CS1 stated that HOLLAMAN and CARTER (a known, high level narcotics trafficker from the Homewood area of Pittsburgh, PA) have traveled together to Beverly Hills,

CA in the past.

12. Investigators were able to corroborate information provided by CS1. Both the FBI and DEA previously conducted narcotics and/or firearms trafficking investigations involving CARTER and have identified him as a high level narcotics trafficker. HOLLAMAN was a suspect in a heroin trafficking investigation conducted by the Attorney General's Office and DEA during the summer of 2014. A review of HOLLAMAN'S criminal history shows that he has numerous drug related arrests.

13. Investigators assigned to this investigation have conducted numerous interviews and reviewed several law enforcement documents and police reports involving HOLLAMAN and CARTER, and the information obtained supports CS1's information identifying HOLLAMAN and CARTER as a narcotics traffickers.

14. In January and February 2016, CS1 attempted to purchase narcotics from HOLLAMAN. CS1 contacted HOLLAMAN on the **SUBJECT TELEPHONE** and set up a time to meet HOLLAMAN. The communication with HOLLAMAN included both phone calls and text messages to discuss the details of a heroin purchase as well as a meeting location. The text messages between CS1 and HOLLAMAN detailed the price, quantity and location of the heroin purchase. The communication included the use two different phone numbers utilized by HOLLAMAN. HOLLAMAN'S phone numbers are identified as (412) 799-4505 (the **SUBJECT TELEPHONE)** as well as (412) 509-6927. CS1 and HOLLAMAN met in an area in or around Pittsburgh, Pennsylvania to discuss CS1 purchasing heroin from HOLLAMAN.

15. During a January 2016 meet between CS1 and HOLLAMAN, HOLLAMAN told CS1 that he would sell CS1 heroin for $160.00 a brick (agents understand a brick to mean 50 stamp bags of heroin). HOLLAMAN stated to CS1 that he currently has two different stamp

bags of heroin, one with the stamp "Diesel" and the other with the stamp "New Arrival." HOLLAMAN also stated to CS1 that he gets his heroin from New Jersey and would be getting more narcotics the following week from his supplier. CS1 left the meet with HOLLAMAN with an agreement to purchase heroin from HOLLAMAN at a later date.

16. Both meetings between CS1 and HOLLAMAN were monitored and audio recorded by ATF and other law enforcement personnel. Surveillance was conducted and CS1 was observed meeting with HOLLAMAN at the pre-established meeting locations. All meetings, phone calls, and text messages conducted at the direction of law enforcement, were consensually made. In most cases, verification for outgoing calls and texts was made by law enforcement by observation of the number dialed. During above stated meetings, CS1 was under constant surveillance by law enforcement.

17. Between January 2016 and February 2016, CS1 and HOLLAMAN agreed to meet so CS1 could buy bricks of heroin from HOLLAMAN for $170.00 per brick. CS1 and HOLLAMAN orchestrated this transaction utilizing the **SUBJECT TELEPHONE**.

18. The second meeting occurred in early February 2016, when CS1 and HOLLMAN agreed to meet in the Pittsburgh area so CS1 could purchase bricks of heroin from HOLLAMAN. Prior to attempting the purchase of narcotics from HOLLAMAN, CS1 was checked for contraband and given money (double counted by law enforcement at the time it was given to CS1 and when the funds were returned to law enforcement from CS1). CS1 contacted HOLLAMAN on the **SUBJECT TELEPHONE** to let HOLLAMAN know CS1 had arrived at the specified location. HOLLAMAN arrived shortly thereafter and informed CS1 that his heroin was located in another section of Pittsburgh. HOLLAMAN informed CS1 that an associate of HOLLAMAN'S would meet them in the parking lot of a convenience store in the East End

section of Pittsburgh. HOLLAMAN told CS1 that his heroin was "flame" (agents understand "flame" to mean good quality).

19. Additionally, HOLLAMAN stated that he currently has "bomb ass hard" with him (agents understand "hard" to mean crack cocaine). HOLLAMAN stated that he has been spending a lot of time on the North Side because of his supply of crack cocaine and demand from customers. HOLLAMAN also stated that in the following week, he expects to get a delivery of around 250 bricks of heroin.

20. CS1 and HOLLAMAN separated without a heroin sale taking place, but within minutes HOLLAMAN called CS1 and told CS1 that although he did not have the quantity of heroin CS1 needed, he could supply CS1 with a lower quantity of heroin, while assuring CS1 he would have a lot more heroin in a few days. CS1 declined the purchase at the direction of law enforcement.

21. Based on my training, experience and discussions with agents who are familiar with all aspects of cell phone networks, cellular technology, and cellular tracking, I know that cell phones can be used to track the current location of fugitives, subjects, witnesses, victims of crimes, perpetrators of crime, and conspirators in crime.

22. Based on the facts and information set forth in this application and affidavit, I respectfully submit that there is probable cause to believe that the information sought herein will assist in locating the supplier of HOLLAMAN'S heroin as well as locations HOLLAMAN may utilize for his narcotics trafficking. Further, by tracking the **SUBJECT TELEPHONE**, investigators should be able to establish surveillance on HOLLAMAN and possibly additional members of his drug trafficking organization, which will show where HOLLAMAN and his associates are located when criminal activity occurs.

23.     Pursuant to 18 U.S.C. § 3103a, to the extent applicable, the government seeks a directive to T-Mobile not to disclose the government's acquisition of physical location data until further notice, and authorization to delay our notification to the subscriber of the **SUBJECT TELEPHONE** until 30 days after acquisition of the last disclosures authorized by the Court's order (unless extended for good cause as demonstrated by an updated showing of the need for further delay).  The grounds for this request are as follows:  The investigation of HOLLAMAN and his associates is ongoing.  The goal of the investigation is to identify HOLLAMAN'S co-conspirators, to determine the precise manner in which the drug trafficking organization operates, and to dismantle the organization through successful arrests and prosecutions of HOLLAMAN and his associates, their sources of supply, their distributors, and any other conspirators who assist the criminal organization.  The investigation has not yet revealed the identities of those involved in the organization, nor the manner in which the organization operates.  Notification of the disclosure of physical location data pertaining to the **SUBJECT TELEPHONE** could possibly cause the user of the **SUBJECT TELEPHONE** to notify those involved within the HOLLAMAN Organization those involved in the organization to, among other things, discard the telephones they are currently using and further conceal their drug trafficking operation.  In doing so, evidence is likely to be lost or never obtained, suspects may flee, and the safety of informants and law enforcement officers may be jeopardized.

24.     WHEREFORE, your affiant respectfully requests that the Court issue an order in the form annexed that:

Pursuant to 28 U.S.C. § 1651(a) and Fed. R. Crim. P. 41 and 57(b), the Court directs T-Mobile to disclose the requested physical location data with respect to the **SUBJECT TELEPHONE** to Special Agents and TFOs of the ATF, by email and any other means readily

available, to be generated at any time up to 45 days from the date of the proposed order, at such intervals and times furnishing all information, facilities, and technical assistance necessary to accomplish said disclosure unobtrusively;

Pursuant to the same authority, the Court authorizes disclosure of the requested physical location data at any time of day or night, due to the potential need to locate the **SUBJECT TELEPHONE** outside of daytime hours;

Pursuant to the same authority, the Court specifies that the location data required to be disclosed by T-Mobile includes not only information with respect to the **SUBJECT TELEPHONE**, but also with respect to any changed telephone number(s) assigned to an instrument bearing the same MSID/ESN as the **SUBJECT TELEPHONE**, or any changed MSID/ESN subsequently assigned to the same telephone number(s) as the **SUBJECT TELEPHONE**, or any additional changed telephone number(s) and/or MSID/ESN, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the **SUBJECT TELEPHONE**, within the period of disclosure authorized by the order;

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the Court directs that T-Mobile be paid compensation by the ATF for reasonable expenses directly incurred in providing the facilities and assistance described above;

In conformity with Fed. R. Crim. P. 41, the Court directs the agents/officers executing the requested order of authorization to prepare returns that shall include entries stating the exact date and time of initial activation of the technology through which the location data is obtained, and the period during which such technology was thereupon used, and within 10 calendar days of the

last authorized acquisition of location data, to file those returns with the Magistrate Judge on duty;

Pursuant to 18 U.S.C. § 3103a , the Court authorizes the government to delay notice to the subscribers of the **SUBJECT TELEPHONE** to the extent requested herein; and

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the Court directs T-Mobile, and its agents, and representatives not to disclose the existence of the proposed orders, their execution, or the underlying investigation until further notice.

Because this investigation is ongoing, it is further respectfully requested that this application and any orders issued thereon be ordered sealed until further notice.

Chris Calamaro
Special Agent, ATF

Sworn to before me this 12
day of February, 2016.

HONORABLE CYNTHIA REED EDDY
UNITED STATES MAGISTRATE JUDGE